## GULF, C. & S. F. RY. CO. v. MINTON.
### (No. 1786.)

Court of Civil Appeals of Texas. Beaumont. March 5, 1929.

Rehearing Denied March 13, 1929.

F. J. & C. T. Duff, of Beaumont, for appellant.

Smith & Lanier, of Jasper, and W. F. Goodrich, of Hemphill, for appellee.

WALKER, J. This suit was brought by appellee against appellant to recover an overcharge of freight paid by him on shipments of gravel which he alleged were made from Fullerton, La., to Buna and Evadale, Tex., over appellant's line of railway. On his allegations, from March to August, inclusive, of 1925, he shipped 616 cars to Buna that actually weighed 28,430,014 pounds, but was forced to pay freight on 32,119,800 pounds, and 429 cars to Evadale that actually weighed 20,089,381 pounds, but was forced to pay freight on 22,296,680 pounds. He alleged that the freight on the Buna shipments was 4½ cents per hundredweight and on the Evadale shipments 5 cents per hundredweight. The total damage claimed on the Buna shipments amounted to $1,660.46, and on the Evadale shipments $1,303.65. Appellant answered by general demurrer and general denial, and by way of cross-action prayed for demurrage in the sum of $140. On trial to the court without a jury, appellee was awarded damages in the sum of $2,242.84, for which judgment was entered in his favor, less the $140 demurrage.

Appellant assails this judgment as being without support in the evidence. The facts are as follows:

This gravel was bought by appellee from Deer & Johnson for use on the public roads of Jasper county, and was shipped by Deer & Johnson from their gravel pits at Deer, La., where it was weighed on their scales and billed to appellee upon their weights. Appellee received and unloaded about 100 cars of the gravel without having it reweighed, and when he spread this gravel on the roads found a big shortage on the basis of the Deer & Johnson weights. He then notified Deer & Johnson of the shortage, and made complaint to them of their weights, but got no relief. They informed him that their scales were correct. He then made complaint to appellant, and asked that it carry four or five of the cars to its yards at Silsbee, Tex., and there weigh them on its scales. This was done, with the following results: A car billed on June 23, as weighing 59,400 pounds, weighed on appellant's scales 53,100 pounds; a car billed on June 24, as weighing 86,200 pounds, weighed on appellant's scales 87,020 pounds. Another car billed on August 14, 1925, as weighing 122,600 pounds, weighed on appellant's scales 121,200 pounds, and another car, billed on that date as weighing 126,100 pounds weighed on appellant's scales 121,200 pounds. Appellee measured carefully the cubic contents of these four cars, with the following results: On appellant's weights the gravel in one of the cars weighed 2,500 pounds per cubic yard, and in the other two cars 2,546 pounds per cubic yard, making an average weight of about 2,541 pounds. After notifying appellant of the trouble with the Deer & Johnson weights, and after appellant had weighed the first car, appellee carefully measured the cubic contents of all subsequent cars shipped to him. On the weights of Deer & Johnson, the weight of this gravel per cubic yard varied from 2,163 pounds to 4,137 pounds. Appellee testified that the weather conditions were about the same during all the time this gravel was being shipped, and that the percentage of metallic matter contained in the gravel was the same through all the shipments.

We have no separate conclusions of fact and law, but appellee has made the following statement as the basis for the court's judgment: "While the judgment does not so reflect upon its face, the court arrived at the amount of the judgment in the following manner: Taking the shipments from June 24th—the date of the weighing of the first car of gravel by the railroad, and after notice given by appellee of his dissatisfaction with Deer & Johnson's weights—there was shipped to appellee 8,288¾ yards of gravel, billed as 25,547,400 pounds, but which actually weighed, figured at 2,541 pounds per cubic yard, 21,061,715 pounds, or an overcharge of 4,485,685 pounds, at 5 cents per hundredweight, or $2,242.84, less $140 demurrage charge against appellee, leaving a balance of $2,102.84."

The judgment has support. Appellee raised the issue that appellant's scales were correct, and that the Deer & Johnson scales were incorrect. He testified that appellant's scales were inspected, and that the Deer & Johnson scales were not inspected. There was very little difference in the weight per cubic yard under appellant's weights for the gravel in the four cars weighed by it, while the weight per cubic yard under the Deer & Johnson weights varied from 2,163 pounds to 4,137 pounds. That appellant's scales showed practically the same weight per yard, and that the Deer & Johnson scales varied so widely, and that appellant's scales were inspected and the Deer & Johnson scales were not, was sufficient to raise this issue as one of fact for the court.

What we have just said is an answer to appellant's proposition that appellee rested under the burden of showing the incorrectness of Deer & Johnson's scales and the correctness of its scales. On another ground that issue was raised. Appellant was required by law to keep its scales in a correct condition (Penal Code, art. 1686), and it held them out to the public as being in that condi-

tion, and by receiving and at appellee's request weighing four of his cars, so held out to him. On these facts the mere introduction of appellant's weights raised the issue that its scales were correct. But, since public policy requires that freight charges be based upon correct weights, the prima facie case against appellant was not conclusive. If its scales were incorrect, it could show that fact.

By showing the average weight of the gravel per yard in four cars, and that the weather conditions were the same, and that the metallic content was the same for all the other shipments, appellee raised the issue that 2,541 pounds was the average weight per cubic yard of the gravel in all the cars shipped to him. As he was able to furnish the court the actual number of cubic yards subsequent to June 24th, the weight of the gravel was a matter of mathematical calculation. Appellee makes no complaint of the court's refusal to give him judgment for the overcharges on the shipments prior to June 24th.

Appellant says that it was released from liability for this claim because of the following provisions of section 101 of the title "Transportation," No. 49, United States Code Annotated: "The carrier may also by inserting in the bill of lading the words 'shipper's weight, load and count,' or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading."

The facts under this proposition are: Appellant had no scales at the point of origin nor at the point of destination. The weights accepted by appellant in fixing its freight charges against appellee were made by Deer & Johnson, who, for this purpose, were the agents of appellee. Appellee made no demand, written or otherwise, on appellant to weigh the shipments, except as to the four cars actually weighed. We quote the following statement from appellant's brief: "It does not appear what notations, if any, were made on the bill of lading. In fact, it does not appear that any bill of lading other than the freight bills or way bills were issued."

Since the facts do not invoke the provisions of this section, it could have no application. However, if we are wrong in that proposition, and if the shipment comes under the provisions of this section, it should not be given the construction insisted upon by appellant; that is, of relieving it absolutely, on the facts stated, from liability. Discussing the liability of carriers under the Transportation Act, the Interstate Commerce Commission, in the Matter of Bill of Lading, 52 I. C. C. 671, said: "Under the law it is the carrier's duty

to collect, and the shipper's duty to pay, freight charges based upon correct, not estimated, weights. * * * The burden of proof to show what is the correct weight should depend, in a measure at least, upon which of the parties, carrier or shipper, is responsible for the accuracy of the weights."

Under the construction placed by the Interstate Commerce Commission on this section, even where it has application, the carrier can collect from the shipper only for the actual weight of the commodity shipped. But where the shipper is responsible for the error in the weights in a suit for overcharge he rests under the burden of showing that the weights furnished by him were incorrect. Appellee assumed and met this burden, and, the record not showing error, the judgment is affirmed.